UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELIA WEST, on behalf of
herself and others similarly situated,

        Plaintiff,

v.                                     CASE NO. 8:08-CV-1325-T-33MAP

VERIZON COMMUNICATIONS, INC., and
PDS TECHNICAL SERVICES, INC.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a former Personal Account Manager ("PAM"), brought this action on behalf of herself and those similarly situated against Defendants for alleged violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"). She seeks to conditionally certify a collective action, to facilitate notice to potential collective action plaintiffs, and to engage in expedited discovery (doc. 38). Defendants oppose the certification of this action as a collective action and object to the proposed notice to the potential collective action plaintiffs (docs. 72, 73, 134). After consideration, I recommend Plaintiff's motion be denied.[1]

    *A. Background*

Defendant PDS Technical Services, Inc. ("PDS") provides staffing and specialty recruiting services to corporate clients in Florida and throughout the United States (doc. 74, Laulo Declaration ¶ 1). PDS hires workers to perform work on a short-term or long-term basis for its clients. At all

---

    [1] The district judge referred the matter for a report and recommendation (doc. 150). *See* 28 U.S.C. § 636 and Local Rule 6.01(b).

times, the workers remain employees of PDS and receive payment and W-2 statements from PDS (*id.*). In turn, PDS receives reimbursement for its expenses from its clients (*id.*).[2]

In December 2007, Verizon solicited PDS for the provision of staffing for a customer service initiative involving the newly implemented PAM position. Specifically, PAMs handle customer inquiries, issues, and complaints from Verizon residential telephone, internet, and cable television customers located in a particular geographic area (doc. 72, Digest ¶ A).[3] In addition, PAMs attempt to sell their customers additional Verizon FiOS products or upgraded services (*id.*). After achieving initial success with the program, Verizon again sought the services of PDS for recruiting and training of individuals for the PAM position resulting in an increase in the number of PAMs from twelve to approximately three hundred by May 2008 (doc. 74, Laulo Declaration ¶ 5). PDS compensated PAMs at a base rate of $10 per hour for forty hours a week, or $400 per week, with the opportunity for a $200 weekly bonus if they received high scores on a weekly customer satisfaction survey (*id.*

---

[2] Defendant Verizon Communications, Inc. ("Verizon") is a holding company, which does not provide goods or services to consumers in the State of Florida or have any employees in the State of Florida (doc. 135, Schapker Declaration ¶ 2). In its answer and response to the instant motion, Verizon clarifies that Plaintiff and the putative class members were actually employed by PDS rather than Verizon. According to Verizon, PDS provided contractual services with its employees to Verizon Florida, LLC, as beneficiary of a contract between PDS and Verizon Services Corporation. Defendant asserts it was not a signatory to that contract. *See* doc. 24 and doc. 135, Schapker Declaration ¶ 2. In the instant motion, Plaintiff states that the parties are exploring the possibility of substituting Verizon Florida, LLC as the proper Defendant as opposed to the corporate parent, Verizon Communications, Inc. (doc. 38). Nothing in the record indicates the parties have moved to substitute parties. At the hearing, Plaintiff expressed concerns about substituting the parties without the aid of discovery to determine which entity (or entities) is the appropriate defendant. As it stands currently, Plaintiff has named Verizon Communications, Inc. as a defendant in this action. Accordingly, any reference herein as to Verizon or Defendants refers to Verizon Communications, Inc.

[3] For ease of reference, the Court will cite to the paragraph letter of the paragraph identified in the digest of the appendix of exhibits in support of PDS's response to Plaintiff's motion rather than to each individual declaration stating the same proposition. *See* doc. 72.

at ¶ 6; doc. 72, Digest ¶ G). Additionally, PAMs were eligible to receive commissions on sales of certain services (doc. 53, West Declaration ¶ 10). As of September 2008, however, Verizon discontinued the PAM program and PDS has subsequently begun reducing the number of individuals it provides as PAMs for Verizon (doc. 74, Laulo Declaration ¶ 7).

In May 2008, Plaintiff began working as a PAM in Pasco County, Florida providing customer service to Verizon FiOS customers (doc. 53, West Declaration ¶ 2; doc. 136, Cutcher Declaration, Exh. A). Verizon provided Plaintiff and other PAMs a Blackberry with a cell phone number associated with that Blackberry as well as e-mail and text capabilities (doc. 53, West Declaration; doc. 72, Digest ¶ C). Because PAMs can take their Blackberry outside the home and work from a remote location, PAMs have the ability to do their jobs anywhere, although many PAMs opt to work from home (doc. 72, Digest ¶ D). This ability to work outside the home provides flexibility to PAMs who are required to field incoming calls from customers between 9 a.m. and 9 p.m. Monday through Saturday and allows PAMs periods of time during the day to engage in other, often significant, non-PAM-related activities such as working around the home, shopping, scheduling appointments, and even working other jobs or attending school (doc. 53, West Declaration Exh. A; doc. 72, Digest ¶¶ H, J, I). Though PAMs do not necessarily have to answer all calls immediately upon receipt, PAMs must return calls received between 9 a.m. and 9 p.m. Monday through Saturday during the same day and return all other calls or e-mails either within 24 hours or by noon the next business day depending on when the PAM received the call (doc. 53, West Declaration, Exh. A; doc. 72, Digest ¶¶ E, F). PAMs must also attend meetings at various Verizon locations (doc. 53, West Declaration ¶ 5). These periodic meetings depend upon the specific supervisor and the specific point in time but typically occur either weekly, biweekly or monthly and generally range from one to two hours per

meeting (doc. 72, Digest ¶ B).

*B. Standard*

The FLSA expressly authorizes the maintenance of a collective action against an employer accused of violating the overtime provisions of the FLSA. 29 U.S.C. § 216(b) ("[a]n action ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). In prospective collective actions brought pursuant to section 216(b), potential plaintiffs must affirmatively opt into the collective action. *Id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Pursuant to 29 U.S.C. § 216(b), certification of collective actions in FLSA cases is based on a theory of judicial economy by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" activity. *See Hoffmann-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989). In making collective action certification determinations under the FLSA, the Eleventh Circuit has suggested a two-tiered approach:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision - usually based only on the pleadings and any affidavits which have been submitted - whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995)[4] (internal footnote omitted)); *see also Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).[5]

To maintain a collective action under the FLSA, the plaintiffs must demonstrate they are similarly situated. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258. Similarly situated employees must affirmatively opt into the litigation by giving their consent in writing and filing their consent in the court in which such action is brought. 29 U.S.C. § 216(b). At the notice stage, the court should initially determine whether there are other employees who desire to opt into the action and whether the employees who desire to opt in are similarly situated. *See Morgan*, 551 F.3d at 1259; *Dybach v. State of Fla. Dep't of Corrs.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991). This determination is made using a fairly lenient standard. *See Hipp,* 252 F.3d at 1218; *Cameron-Grant,* 347 F.3d at 1243 n.2. The plaintiff has the burden of demonstrating a reasonable basis for the claim that there are other similarly situated employees and must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Morgan*, 551 F.3d at 1260; *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotations and citation omitted). Essentially, the court must satisfy itself that there are other employees who are similarly situated and who desire to opt in. *Dybach,* 942 F.2d at 1567-68.

*C. Discussion*

---

[4] *Mooney* was overruled in part on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[5] Though the Eleventh Circuit recommended district courts utilize this approach, the court noted nothing in the circuit's precedent required district courts to utilize it. *Hipp*, 252 F.3d at 1219. In fact, the Eleventh Circuit noted the decision to create an opt-in class under § 216(b) "remains soundly within the discretion of the district court." *Id.*

Plaintiff seeks conditional certification and Court-approved notice to the proposed class members of all PAMs who currently work for Defendants or who have worked for Defendants up to two years prior to the filing of this action. Plaintiff operates under the legal theory that all PAMs worked from 9 a.m. to 9 p.m. Monday through Saturday resulting in each PAM working a total of seventy-two hours per work week.[6] Rather than compensating PAMs accordingly, Plaintiff asserts Defendants have a policy of requiring or permitting PAMs to work these extended hours without adequately compensating them at time and one-half the regular rate for all hours worked in excess of forty each work week (doc. 1). In contrast, Defendants assert PAMs have great flexibility in setting their own schedules and that significant variation exists with respect to the schedule used by each PAM (doc. 72, Digest ¶ L).

To demonstrate the need for certification of a collective action, Plaintiff provides more than eighty consents to join a collective action and thirteen declarations (including that of Plaintiff). The Court can, thus, satisfy itself that other employees exist who desire to opt into this action. The question remains, however, whether Plaintiff has demonstrated a reasonable basis for the claim that these employees are similarly situated to Plaintiff. The declarations filed in support of Plaintiff's motion state each declarant worked as a PAM, provide a general job description, state the PAMs worked a schedule from 9 a.m. to 9 p.m. Monday through Saturday and additionally attended meetings at Verizon locations, describe the payment method for PAMs and state that all PAMs performed similar job responsibilities and were subject to similar employment policies and practices.

---

[6] At the hearing, Plaintiff advanced an alternative theory that the complaint could be read as stating a claim for hours worked in excess of 40 but less than 72. Even applying the liberal pleading standard under Fed. R. Civ. P. 8, a reasonable reading of the complaint does not support such a position.

*See* docs. 41-53.

As shown by the 59 declarations attached to each Defendant's responses to the motion to certify, however, each PAM's schedule differed from the other PAMs and, in fact, varied from day to day for each individual PAM. Though potential class members need not hold identical positions, the similarities required to maintain a collective action under 29 U.S.C. § 216(b) must extend beyond the mere facts of job duties and pay provisions. *See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (citations and quotation omitted); *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1270 (M.D. Ala. 2004).[7] In this case, the similarities essentially amount to job duties and pay provisions. Based on this record, it appears the potential plaintiffs are not similarly situated and, rather, an individualized inquiry would be required for each PAM. The need for individualized inquiries would contravene the basic theory of judicial economy upon which the certification of collective actions is based. *See Hoffmann-LaRoche, Inc.,* 493 U.S. at 170.

Furthermore, Defendants have offered a statistically significant number of PAMs who assert they spend much of their "on-call" time engaged in other activities. *See e.g.* declarations of Jarelle Ali, doc. 71 (attends college part-time during hours required to be on call as PAM); Will Martinez, doc. 110 (attends school full-time and studying to become a nurse during hours required to be on call as PAM); Demetrius Sanders, doc. 126 (teaches high school math, science and special education courses during hours required to be on call as PAM); Kurt Veilleux, doc. 132 (works as a firefighter

---

[7] Though the *Anderson* court expressed this view in a discussion regarding the similarly-situated determination at the second stage of the two-tier approach, where, as in this case, the parties have submitted substantial evidence at the notice stage, some courts have considered all of the evidence submitted by the parties and determined that collective action certification or notice to potential plaintiffs is inappropriate. *See e.g. Tyler v. Payless Shoe Source, Inc.*, 2005 WL 3133763, *6-*7 (M.D. Ala. November 23, 2005); *Holt*, 333 F.Supp.2d at 1270.

and paramedic during hours required to be on call as PAM). Indeed, time spent by employees engaged to wait for an employer's call to duty may be compensable under the FLSA depending on the degree to which the employee may use the time for personal activities. *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992). The main question to ask is whether the time spent by the employee is predominately spent for the employer's benefit or for the employee's. *Id.* In determining whether the FLSA covers on-call time, the court should examine the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. *Id.* at 808 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944)). Basically, "an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA." *Id.* at 810.

Here, the PAM job requirements did not severely restrict the free time of a statistically significant number of PAMs and, instead, the requirements of the position allowed PAMs to partake in a variety of personal activities during the hours identified as working hours in the PAM Requirements Agreement (doc. 38, Exh. A). Indeed, as the declarations filed in support of Defendants' responses indicate, a significant subsection of PAMs actively engaged in other activities, including attending school and engaging in other employment, during hours in which they were to be "on call" as a PAM. Additionally, the issuance of a Blackberry to each PAM allowed the individuals the flexibility to conduct their required calls and e-mails while engaging in activities both inside and outside the home. Not only does this weaken Plaintiff's theory that all PAMs worked a total of seventy-two hours each week, it lends great support to Defendants' position that PAMs cannot be classified as similarly situated for the purposes of a § 216(b) collective action. Therefore,

even at this early stage, it is apparent that Plaintiff cannot establish individuals in the PAM position are similarly situated.

*D. Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1. Plaintiff's motion to conditionally certify collective action, to facilitate notice, and for limited expedited discovery (doc. 38) be denied.

IT IS SO REPORTED at Tampa, Florida on July 29, 2009.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: The Honorable Virginia M. Hernandez Covington
    Counsel of Record