UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELIA WEST, on behalf of herself
and others similarly situated,

                Plaintiffs,
v.                                Case No.  8:08-cv-1325-T-33MAP

VERIZON COMMUNICATIONS, INC. and
PDS TECHNICAL SERVICES,

                Defendants.
_____/

**ORDER**

This cause is before the Court pursuant to West's Motion to Conditionally Certify Collective Action, to Facilitate Notice, and for Limited Expedited Discovery (the "Class Certification Motion" Doc. # 38), which was filed on September 22, 2008.  On July 29, 2009, the Honorable Mark A. Pizzo, United States Magistrate Judge, issued a Report and Recommendation (Doc. # 156), recommending that the Class Certification Motion be denied.

On August 7, 2009, Defendant PDS Technical Services (hereafter "PDS") filed a limited objection to the Report and Recommendation (Doc. # 157).  Thereafter, on August 12, 2009, West filed her objections to the Report and Recommendation (Doc. # 158).  On August 27, 2009, Verizon and PDS responded to West's objections to the Report and Recommendation. (Doc.

## 160, 161). On August 28, 2009, West responded to PDS's limited objection to the Report and Recommendation. (Doc. # 162).[1] For the reasons that follow, the Court adopts the Report and Recommendation in part.

I. **Analysis**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). In the absence of specific objections, there is no requirement that a district judge review factual findings de novo, Garvey v. Vaughn, 993 F.2d 776, 779 n. 9 (11th Cir. 1993), and the court may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions de novo, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); Castro Bobadilla v. Reno, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), aff'd, 28 F.3d 116 (11th Cir. 1994).

---

[1] The record reflects that Judge Pizzo heard oral argument on the Class Certification Motion on July 20, 2009. (Doc. # 154).

In this case, the parties have filed multiple objections to the Report and Recommendation. This Court will address the merits of each objection.

**A.   The Report and Recommendation**

In the Class Certification Motion, West contends that Personal Account Managers ("PAMs"), employed by Defendants, were not compensated at time and one-half for overtime hours in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"). West further contends that PAMs were so similarly situated as to allow conditional class certification.

Judge Pizzo recommends that the Class Certification Motion be denied based on his finding that the PAMs are not similarly situated. (Doc. # 156 at 9). See Morgan v. Family Dollar Store, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008)("To maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated."). Judge Pizzo reached this conclusion after a complete review of the file, including eighty "consents to join collective action" and numerous declarations, including West's declaration.

Judge Pizzo provided the following summary of the PAMs' working conditions:

> Verizon provided Plaintiff and other PAMs a Blackberry with a cell phone associated with that Blackberry as well as e-mail and text capabilities. Because PAMs can take their Blackberry outside the home and work from a remote location, PAMs have the ability to do their jobs anywhere, although many PAMs opt to work from home. This ability to work outside the home provides flexibility to PAMs who are required to field incoming calls from customers between 9 a.m. and 9 p.m. Monday through Saturday and allows PAMs periods of time during the day to engage in other, often significant, non-PAM-related activities such as working around the home, shopping, scheduling appointments, and even working other jobs or attending school. Though PAMs do not necessarily have to answer all calls immediately upon receipt, PAMs must return calls received between 9 a.m. and 9 p.m. Monday through Saturday during the same day and return all other calls or e-mails either within 24 hours or by noon the next business day depending on when the PAM received the call. PAMs must also attend meetings at various Verizon locations. These periodic meetings depend upon the specific supervisor and the specific point in time but typically occur either weekly, biweekly or monthly and generally range from one to two hours per meeting.

(Doc. # 156 at 3-4)(internal citations omitted).[2]

Furthermore, Judge Pizzo determined that "the PAM job requirements did not severely restrict the free time of a statistically significant number of PAMs and, instead, the

---

[2] Judge Pizzo remarked in the "background" section of his Report and Recommendation that "PDS compensated PAMs at a base rate of $10 per hour for forty hours a week, or $400 per week, with the opportunity for a $200 weekly bonus if they received high scores on a weekly customer satisfaction survey." (Doc. # 156 at 2)(citing Doc. # 74, Laulo Decl. at ¶ 6, Doc. # 72, Digest ¶ G).

requirements of the position allowed PAMs to partake in a variety of personal activities during the hours identified as working hours in the PAM Requirements Agreement." (Doc. # 156 at 8)(citing Doc. # 38 at Ex. A).

Judge Pizzo described some of the individual PAMs, including their non-PAM activities, including Jarelle Ali (attends college part-time during hours required to be on-call as a PAM); Will Martinez (attends school full time and studying to become a nurse during hours required to be on-call as a PAM); Demetrius Sanders (teachers high school math, science, and special education courses during hours required to be on-call as a PAM); and Kurt Veilleux (works as a firefighter and paramedic during hours required to be on-call as a PAM). (Doc. # 156 at 7-8)(citing Doc. ## 71, 110, 126, and 132).

Because the PAMs had such opportunities to engage in non-work related activities during "on-call" time, Judge Pizzo concluded that the PAMs are not similarly situated. Accordingly, he recommends that the Class Certification Motion be denied.

**B. Objections**

    **1. PDS's Limited Objection**

Overall, PDS agrees with the Report and Recommendation. PDS lodges a single objection: "Specifically, PDS objects to the Magistrate Judge's factual finding that 'PDS compensated PAMs at a base rate of $10 per hour for forty hours a week.'" (Doc. # 157 at 1)(citing Doc. # 156 at 2). PDS contends that this finding is not supported by the evidence. PDS asserts that "PAMs were paid $400 per week for all hours worked, not $10 per hour for forty hours per week." (Doc. # 157 at 2).

In addition, PDS argues that the finding concerning the PAMs' hourly wage is not necessary to the recommendation that the Class Certification Motion be denied.

West responds to PDS's limited objection by pointing to evidence on file that supports the finding concerning the PAMs' hourly wage. West draws the Court's attention to eleven PAM declarations, all of which state that they were paid ten dollars an hour for forty hours per week and not compensated for the remaining hours worked. See e.g., Declaration of McKenzie D. Barrow (Doc. # 41). McKenzie D. Barrow reported that she worked as a PAM in Manatee County, Florida. (Doc. # 41 at ¶ 2). As to her compensation, she noted, "PAMs work from 9 a.m. to 9 p.m. Monday through Saturday for a total of seventy-two (72) hours per week. PAMs are paid $10 per forty (40) hours of work and do not receive any overtime

compensation for the additional thirty-two (32) hours worked per week." (Doc. # 41 at ¶¶ 6-7).

West asserts that PDS "is likely thinking ahead to any damage calculations in the hope that the fluctuating work week method of calculating overtime will be used." (Doc. # 162).

The Court notes that Judge Pizzo's finding regarding the PAMs' hourly rate was made in passing, in the "background" section of the Report and Recommendation, and the finding is not essential to Judge Pizzo's determination that the PAMs are not similarly situated. The Court determines that it is appropriate to disregard Judge Pizzo's finding that "PDS compensated PAMs at a base rate of $10 per hour for forty hours a week." Further briefing is required before making a determination concerning the manner in which the PAMs were compensated.[3] PDS is entitled to a more detailed determination of the pay schedule for the PAMs. Accordingly, PDS's limited objection is sustained.

### 2. **West's Objections**

---

[3] While the Court has decided to disregard Judge Pizzo's specific finding concerning compensation, outlined above, the Court has not determined that such finding is incorrect. After further briefing on the matter, this Court may reach the same conclusion as Judge Pizzo did in the Report and Recommendation. However, the matter of the PAMs' compensation is not ripe for consideration at this point in the litigation.

West objects to the Report and Recommendation on grounds that Judge Pizzo: (1) failed to follow the two-tiered certification procedure used in the Eleventh Circuit; (2) improperly considered the merits of the case; (3) relied solely on Defendant's affidavits and ignored West's evidence; (4) applied an unsuitable "on-call" analysis; (5) relied on erroneous findings of fact; (6) incorrectly assumed Plaintiffs could not be similarly situated under the more restrictive definition of "work;" and (7) failed to take into account procedural and fairness considerations. (Doc. # 158 at 1-2).

### a. **Two-Tiered Analysis**

West objects to the Report and Recommendation on the basis that Judge Pizzo did not utilize the Eleventh Circuit's two-tired analysis for FLSA class certification as outlined in <u>Hipp v. Liberty National Life Insurance Co.</u>, 252 F.3d 1208 (11th Cir. 2001). Judge Pizzo acknowledges in the Report and Recommendation that he did not use the two-tiered analysis for putative class actions under FLSA. However, as noted in the Report and Recommendation, the two-tiered analysis is not mandatory. The Eleventh Circuit explained in <u>Hipp</u>:

> The two-tiered approach to certification of § 216(b) opt-in classes . . . appears to be an effective tool for district courts to use in managing these often complex cases . . . . Nothing in our circuit precedent, however, requires

>     district courts to utilize this approach. The
>     decision to create an opt-in class . . . remains
>     soundly within the discretion of the district
>     court.

252 F.3d at 1219.

Judge Pizzo described the mechanics of the two-tiered analysis but ultimately determined that it was not appropriate for this case. "District Courts enjoy broad discretion in deciding how best to manage the cases before them." <u>Chudasama v. Mazda Motor Corp.</u>, 123 F.3d 1353, 1366 (11th Cir. 1997). Furthermore, the Eleventh Circuit specifically ruled in <u>Hipp</u> that utilization of the two-tiered approach is discretionary. 252 F.3d at 1219. Accordingly, West's objection, based on Judge Pizzo's failure to use the two-tiered approach to class certification, is overruled.

### b. **Consideration of the Merits of the Case**

West objects to the Report and Recommendation on the basis that Judge Pizzo improperly considered the merits of the case in conducting his class certification analysis. In support of this contention, West relies upon <u>Kerce v. West Telemarketing Corp.</u>, 575 F.Supp.2d 1354, 1358 (S.D. Ga. 2008) ("In considering a motion to conditionally certify the class in a wage and hour dispute, the Court does not reach the merits of the case.")

The Court generally agrees with West that class certification issues should be determined separately from the merits of the case. However, class certification issues cannot be decided in a vacuum. As noted by PDS, "It is entirely appropriate for the Court to be cognizant of the factual and legal issues presented by the case when determining whether this case can be appropriately treated as a collective action." (Doc. # 161 at 7).

Judge Pizzo properly considered the record and made the factual findings necessary to decide the class certification issue. Accordingly, West's objection on the basis of Judge Pizzo's alleged merits analysis is overruled.

### c. **Consideration of the Evidence**

West contends that "the Magistrate appears to be relying exclusively on Defendants' affidavits. These affidavits are from employees who were working for Defendants at the time the affidavits were made." (Doc. # 158 at 6). Verizon correctly counters that West's objection on this basis "ignores the actual content of the R & R." (Doc. # 160 at 8).

West's accusation that Judge Pizzo overlooked her evidence and relied exclusively on Defendants' affidavits is simply unfounded. The Report and Recommendation comments on

affidavits and other evidence submitted by both sides and neutrally interprets the evidence.[4]

West also lodges objections to certain factual findings contained in the Report and Recommendation, arguing that such findings were based on Defendants' affidavits alone.[5] The Court agrees with PDS in that "the Magistrate Judge is not required to recite every piece of evidence that he examined or considered." (Doc. # 161 at 9). This Court is not persuaded that Judge Pizzo unfairly favored Defendants' evidence or ignored West's evidence. West's objection on this basis is overruled.

### d. "On-Call" Time

West objects to Judge Pizzo's analysis of the PAMs "on-call time." She objects to Judge Pizzo's analytical framework

---

[4] Among other discussions of West's evidence, Judge Pizzo states: "The declarations filed in support of Plaintiff's motion state each declarant worked as a PAM, provide a general job description, state the PAMs worked a schedule from 9 a.m. to 9 p.m. Monday through Saturday and additionally attended meetings at Verizon locations, describe the payment method for PAMs and state that all PAMs performed similar job responsibilities and were subject to similar employment policies and practices. See docs. 41-53." (Doc. # 156 at 6-7).

[5] This Court will address West's specific factual objections later.

as well as to his specific factual findings concerning "on-call" time.

### i. **Analytical Framework**

In the Report and Recommendation, Judge Pizzo remarked, "Defendants have offered a statistically significant number of PAMs who assert they spend much of their 'on-call' time engaged in other activities." (Doc. # 156 at 7). Judge Pizzo then evaluated specific employees' circumstances under the analytical framework of Birdwell v. City of Gadsden, 970 F.2d 802, 807 (11th Cir. 1992), in which the court explained:

> When employees are engaged to wait for the employer's call to duty, this time may be compensable under the FLSA. The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities. This question has been formulated as whether the time is spent predominately for the employer's benefit or for the employee's. . . . When deciding whether on-call time is covered by the FLSA, the court should examine the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.

970 F.2d at 807-808 (internal citations and quotations omitted).

Judge Pizzo determined that "the PAM job requirements did not severely restrict the free time of a statistically significant number of PAMs and, instead, the requirements of the position allowed PAMs to partake in a variety of personal activities during the hours identified as working hours in the PAM Requirements Agreement." (Doc. # 156 at 8)(citing Doc. # 38 at Ex. A). Judge Pizzo reasoned that, because a significant number of the PAMs engaged in other activities such as alternative employment and pursuit of higher education, "PAMs cannot be classified as similarly situated for the purposes of a § 216(b) collective action." (Doc. # 156 at 8).

West points out that the <u>Birdwell</u> case involved police officers waiting for a call to action from their employer, whereas, in this case, the PAMs received direct calls from customers, requiring PAMs to perform their duties immediately. In addition, West asserts, "PAMs do not receive just one phone call that then puts them 'on-duty' for a certain length of time. They receive many phone calls all day requiring them to be constantly 'on duty.'" (Doc. # 158 at 8).

West's characterization of Judge Pizzo's <u>Birdwell</u> analysis and the evidence on the record is skewed.

In Birdwell, the Eleventh Circuit determined that the police officer's "on-call" time was not compensable and noted, that "on-call" time must place severe restrictions on an employee's freedom to be compensable. 970 F.2d at 807, 810. In the present case, significant record evidence shows that PAMs used their "on-call" time to pursue substantial outside activities, including outside employment, pursuit of higher education, caring for ailing relatives, and other time consuming and important endeavors.

### ii. **Factual Findings**

In addition, West objects to certain factual findings contained in the Report and Recommendation concerning "on-call" time. West objects to the following findings as stated in the Report and Recommendation:

> This ability to work outside the home provides flexibility to PAMs who are required to field incoming calls from customers between 9 a.m. and 9 p.m. Monday through Saturday and allows PAMs periods of time during the day to engage in other, often significant, non-PAM-related activities such as working around the home, shopping, scheduling appointments, and even working other jobs or attending school. Though PAMs do not necessarily have to answer all calls immediately upon receipt, PAMs must return calls received between 9 a.m. and 9 p.m. Monday through Saturday during the same day and return all other calls or e-mails either within 24 hours or by noon the next business day depending on when the PAM received the call.

(Doc. # 156 at 3).

First, West contends that "someone who is required to answer calls for 12 hours each day could not work another job, attend school, or engage in other significant activities without sacrificing their PAM responsibilities." (Doc. # 158 at 11). Furthermore, West maintains that it was a violation of company policy for PAMs to work other jobs or attend school during "on-call" time.

The record shows that some PAMs did engage in significant activities, including other employment and educational pursuits, while "on-call." The issue of whether these PAMs deviated from a company policy is not germane to the class certification issue. The Court adopts Judge Pizzo's finding on this point.

Second, West contends that Judge Pizzo erred when he remarked that PAMs did not have to answer all calls immediately upon receipt. West indicates that PAMs were required to answer 90% of their incoming calls and that PAMs were subject to discipline if they did not answer incoming calls.

Once again, the Court overrules West's objection. The Court agrees with PDS that "Plaintiff's objection to the Magistrate Judge's finding that PAMs are not required to answer all calls upon receipt is nothing more than Plaintiff's

disagreement with the Magistrate Judge's view of a factual dispute regarding what PAMs were told regarding their job responsibilities." (Doc. # 161 at 14). Whether the PAMs were required to answer 90% or their in-coming calls is not relevant to whether PAMs are similarly situated. Furthermore, Judge Pizzo's statement that "PAMs do not necessarily have to answer all calls immediately upon receipt" is not inconsistent with West's statement that PAMs were required to answer 90% of their incoming calls.

Thus, West's objection based upon Judge Pizzo's analysis of "on-call" time is overruled.

### e. **PAMs' Workweek**

West appears to contend that conditional certification is appropriate even if the class members have individualized workweeks, rather than the 72 hour workweek alleged in the complaint. West's contentions on this point are nebulous at best. Further, while framed as an "objection" West's arguments regarding the PAMs' workweek do not appear to be directed to any finding of fact or legal conclusion in the Report and Recommendation.

As emphasized by Verizon, some PAMs worked, on average, only three hours per day. (C. Cooney Decl. ¶ 12; McAllister Decl. ¶ 14; McDarby Decl. ¶ 14, Philgence Decl. ¶ 14). Other

PAMs worked between five and six hours per day. (Casper Decl. ¶ 14). Many of the PAMs asserted that the amount of time that they worked decreased over the duration of their employment. "During the first two weeks as a PAM, I worked no more than 40 hours per week" and "after those first two weeks and currently, I work an average of 20 hours per week." (Gerodimos Decl. ¶ 14).

Due to the extreme variations in the number of hours actually worked by the PAMs, as well as the variability within an individual PAM's day-to-day activities, no collective proof can be offered for the number of hours worked by the PAMs. This holds true regardless of whether the PAMs' workweeks are evaluated under a 72 hour workweek or some other formulation. Accordingly, West's contentions on this issue are overruled.

### f. Fairness and Procedural Issues

West contends that, if the Report and Recommendation is adopted, "the parties and the Court could be faced with litigating hundreds of separate proceedings all within the Middle District of Florida." (Doc. # 158 at 12). West further remarks that denial of the Class Certification Motion would "hinder judicial economy" and "lead to inconsistent and unfair results." (Doc. # 158 at 12).

Judge Pizzo weighed the important considerations West raises in her final objection. However, Judge Pizzo determined that granting the Class Certification Motion would result in a waste of scarce judicial resources. More specifically, Judge Pizzo explained, "[I]t appears the potential plaintiffs are not similarly situated and, rather, an individualized inquiry would be required for each PAM. The need for individualized inquires would contravene the basic theory of judicial economy upon which the certification of collective actions is based." (Doc. # 156 at 7). The Court overrules West's objection based upon fairness and procedural issues.

## II. Conclusion

The Court has conducted an independent examination of the file and upon due consideration of the report and recommendation, the Court accepts the report and recommendation of Judge Pizzo, with the exception of one finding, as discussed above.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Judge Pizzo's Report and Recommendation (Doc. # 156) is **ADOPTED, CONFIRMED,** and **APPROVED**, with one exception. The Court sustains PDS's limited objection (Doc. # 157)

to Judge Pizzo's factual finding that "PDS compensated PAMs at a base rate of $10 per hour for forty hours a week." (Doc. # 156 at 2).

(2) West's Motion to Conditionally Certify Collective Action, to Facilitate Notice, and for Limited Expedited Discovery (Doc. # 38) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>10th</u> day of September 2009.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record