UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELIA WEST, et al.,                          )
                                             )
        Plaintiffs,                          )
                                             )
v.                                           )   Case No. 8:08-cv-01325-VMC-MAP
                                             )
VERIZON SERVICES CORP., VERIZON )
FLORIDA, LLC and PDS TECHNICAL )
SERVICES, INC.,                              )
                                             )
        Defendants.                          )
_____ )

PDS TECHNICAL SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

        Defendant PDS Technical Services, Inc. ("PDS") hereby moves pursuant to Fed.

R. Civ. P. 56, M.D. Fla. L.R. 3.01, and other applicable law for partial summary

judgment as to certain issues relating to the claims set forth by Plaintiff Delia West

("Plaintiff") in her Amended Complaint and Demand for Jury Trial ("Amended

Complaint").  Specifically, PDS seeks judgment rejecting as a matter of law

(1) Plaintiff's theory that the requirement that she be available to handle customer calls

from 9 a.m. to 9 p.m., six days per week, compels a finding that she regularly worked 72

hours per week; and (2) her claim that, in the event she can show that she worked more

than 40 hours in a given week, she is due one and one-half times her regular rate of pay

for each such overtime hour.[1]  In support of its motion, PDS relies upon the deposition

_____

[1]        Defendants Verizon Services Corp. and Verizon Florida, LLC (together,
"Verizon") separately move for summary judgment on additional grounds.  While PDS

testimony of Plaintiff ("Pl. Dep."), David Cutcher ("Cutcher Dep."), Kyle Laulo ("Laulo

Dep."), Graciela Lockwood ("G. Lockwood Dep."), and James Lockwood ("J. Lockwood

Dep."); the declarations of David Cutcher ("Cutcher 1st Decl.," originally submitted as

Dkt. No. 136, and "Cutcher 2nd Decl.," which will be submitted by Verizon in connection

with its Motion for Summary Judgment) and Kyle Laulo ("Laulo 1st Decl.," originally

submitted as Dkt. No. 74, and "Laulo 3rd Decl.," submitted herewith), Plaintiff's Answers

to Court's Interrogatories ("Pl. Rog. Answers," originally submitted as Dkt. No. 165),

Verizon Communication Inc.'s Summary of Evidence Regarding Hours Worked by

Plaintiffs ("Verizon Summary," originally submitted as Dkt. No. 170) and all other

matters of record.  For the convenience of the Court, the record materials specifically

relied upon by PDS are collected in the Appendix in Support of PDS Technical Services,

Inc.'s Motion for Partial Summary Judgment and Memorandum of Law in Support

Thereof, filed herewith.

## I.     STATEMENT OF FACTS[2]

### A.     PDS and the PAM Program.

PDS is a staffing and specialty recruiting company with branches located

throughout the United States, including one in Tampa, Florida.  (Laulo 1st Decl. at ¶ 1.)

Verizon is one of PDS's customers in the Tampa area.  (*Id.* at ¶ 3.)  In December 2007,

Verizon engaged PDS to provide staffing for a customer service initiative involving the

newly created position of Personal Account Manager, or "PAM."  (*Id.*)  A pilot version of

---

does not specifically address those additional grounds herein, it incorporates Verizon's
arguments and request for summary judgment.

[2]     PDS accepts the facts set forth herein as true for purposes of this motion only.

the PAM program began in early 2008.  (Cutcher Dep. at 26.)  After the success of this

pilot program, and at Verizon's request, PDS engaged in significant recruiting efforts in

April and May 2008 to build the number of PAMs in the program to approximately 300.

(Laulo 1st Decl. at ¶ 5.)

       B.      <u>PAM Job Duties and Responsibilities</u>.

       Plaintiff began working as a PAM on May 19, 2008.  (Pl. Dep. at 67; Pl. Rog.

Answers at 1.)  She worked as a PAM until October 3, 2008, when the PAM program

was discontinued.  (Laulo Dep. at 24, 59; Pl. Rog. Answers at 1.)  As a PAM, Plaintiff

was a customer service worker responsible for handling customer inquiries, issues, and

complaints from a group of assigned Verizon residential telephone, internet and cable

television customers located in a particular geographic area.[3]  (Pl. Dep. at 111-13;

Cutcher Dep. at 30-31.)  In addition to helping resolve customer inquiries and complaints,

Plaintiff also had responsibility for selling additional Verizon products or upgraded

services to her customers.  (Pl. Dep. at 112-13.)  She was also required to attend periodic

group meetings with her supervisor.  (*Id.* at 114-15.)

       Verizon issued Plaintiff and the other PAMs a Blackberry and a cell phone

number associated with the Blackberry to use for all PAM-related communications with

assigned Verizon customers.  (Pl. Dep. at 105, 107-08.)  Plaintiff used the Blackberry

---

[3]      In one portion of her testimony, Plaintiff described her duties as a PAM as
follows: answering calls and responding to emails from customers, introducing herself to
new customers by making outgoing calls, serving as a liaison between customers and
Verizon's technical support and billing departments, upgrading and selling Verizon
products, attending periodic meetings, and logging every phone call or email onto
Verizon's PAM Website.  (Pl. Dep. at 100, 110-15.)

phone for all phone calls to and from Verizon customers, and for all calls in connection with her efforts to resolve customer questions and issues.  (*Id.* at 108.)  The portability of the Blackberry allowed Plaintiff to carry out her primary responsibilities as a PAM – communicating with her customers – from wherever she happened to be located throughout a particular day.  (Cutcher Dep. at 30; Laulo Dep. at 29.)  While Plaintiff maintains that she took little advantage of this flexibility, she acknowledges that many other PAMs were able to do such things as maintain other jobs or attend school away from home while also working as a PAM.  (Pl. Dep. at 202-03.)  Notwithstanding the flexibility that the Blackberry afforded her, Plaintiff contends that she elected to work primarily from her home, with limited exceptions such as periodic PAM meetings and some church related functions.  (*Id.* at 129-30, 207.)

     C.    <u>Plaintiff's Salary and Work Hours as a PAM.</u>

Plaintiff was paid a weekly salary of $400, plus commissions.  (Pl. Dep. at 213; Cutcher Dep. at 52; Laulo Dep. at 25.)  This salary was intended to compensate her for all hours she worked in a given workweek.  (Pl. Dep. at 214.)  She was also eligible to receive a $200 bonus each week if she received a certain customer satisfaction score.  (*Id.* at 213; Cutcher Dep. at 52; Laulo 1st Decl. at ¶ 6.)

Plaintiff was supposed to be generally available to receive and respond to customer inquiries from 9 a.m. to 9 p.m., Monday through Saturday.  (Pl. Dep. at 110; Cutcher Dep. at 29-30.)  Plaintiff contends that she was instructed to answer all calls when the phone rang, unless she was on the line with another customer.  (Pl. Dep. at

131.)  In the event Plaintiff missed a call, she was instructed to return the call later that day.  (*Id.* at 131.)

Despite the fact that Plaintiff was generally expected to answer customer calls from 9 a.m. to 9 p.m. on Monday through Saturday, there was no expectation that she would actually be working during that entire period of time.  (Pl. Dep. at 215-16; Cutcher Dep. at 30; Laulo Dep. at 29; Laulo 3rd Decl. at ¶ 3)  Rather, according to Plaintiff, Verizon told her that as a PAM she would work on average 20 to 25 hours per week and at most 40 hours per week.  (Pl. Dep. at 215-16)  Plaintiff, however, claims that she actually worked from 9 a.m. to 9 p.m., Monday through Saturday, each week of her employment as a PAM.[4]  (Pl. Dep. at 195.)

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Summary Judgment Standard.

Summary judgment is appropriate when "there is no genuine issue as to any material fact…and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The party moving for summary judgment bears the initial burden of demonstrating to the court "that there is an absence of evidence to support the nonmoving

---

[4]   Records from Plaintiff's PAM Blackberry reveal that the most time Plaintiff ever spent on the phone in connection with her PAM-related duties in a single day was 5.5 hours.  (*See* Cutcher 1st Decl. at Ex. A (entries for July 9, 2008); Verizon Summary at 2-5.)  On many days, she spent 16 minutes or less on her Blackberry phone handling customer questions and inquiries.  (*See, e.g.*, Verizon Summary at 2-5; Cutcher 1st Decl. at Ex. A (entries for May 30, 2008, June 2, 2008, June 7, 2008, July 18, 2008, July 19, 2008, July 24, 2008, July 25, 2008, July 27, 2008, July 28, 2008, July 29, 2008, July 30, 2008, July 31, 2008, August 1, 2008, August 2, 2008, August 13, 2008, and August 13, 2008).)  The most time that she ever spent in a given week on her Blackberry phone was 12.9 hours.  (*See* Verizon Summary at 2-5; Cutcher 1st Decl. at Ex. A (entries for at June 9, 2008 through June 14, 2008).)

party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving

party satisfies this initial burden, the burden shifts to the nonmoving party to "make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Id.* at 322.  "The

nonmoving party must provide more than a mere scintilla of evidence to survive a motion

for judgment as a matter of law; 'there must be a substantial conflict in evidence to

support a jury question.'" *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir.

1998); *see also Scott v. K.W. Max Invs., Inc.*, 256 F. App'x 244, 247 (11th Cir. 2007)

(noting that where the nonmovant's "evidence 'is merely colorable, or is not significantly

probative,' summary judgment is appropriate.") (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249-50 (1986)).

> B.   Time Spent Simply Carrying the Blackberry is Not Compensable

In her answers to the Court's FLSA interrogatories and otherwise, Plaintiff claims

that she is entitled to compensation, including overtime pay, for a regular 72-hour

workweek because she carried the Blackberry and was "on-call" to handle customer

inquiries from 9 a.m. to 9 p.m., Monday through Saturday, regardless of whether she was

actually performing services during that period.  (*See* Pl. Rog. Answers at 1-3.)

Plaintiff's Amended Complaint removes any express reference to a 72-hour workweek

theory.  However, Plaintiff maintains her allegation that PAMs were instructed to field all

incoming calls from 9 a.m. to 9 p.m., Monday through Saturday, and further alleges that

she performed work as a PAM each week for more than 40 hours.  (*See* Dkt. No. 189 at

¶¶ 16, 20.)  Thus, to the extent Plaintiff alleges that she is entitled to overtime

compensation for time spent "on-call" and not actually performing work as a PAM, PDS asks the Court to dismiss such a claim as matter of law.

While perhaps doubtful of her own theory and accordingly now subscribing to the position that she spent nearly all of her time "working" at her home office, the record evidence demonstrates that Plaintiff at times left the house with her Blackberry in hand and attended to personal matters unless or until a call came in.  (*See* G. Lockwood Dep. at 52, 63-64, 121-123; J. Lockwood Dep. at 72-73; Pl. Dep. at 206-07.)  This time, during which Plaintiff was free to attend to whatever she wanted to, is not compensable and Plaintiff's claim to the contrary must fail.

Whether on-call time is compensable depends on whether "the time is spent predominately for the employer's benefit or for the employee's," which "depends on the degree to which the employee may use the time for personal activities."  *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992) (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944), and *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944)).  "[I]t is clear that an employee's free time must be *severely restricted* for off-time to be construed as work time for purposes of the FLSA."  *Birdwell*, 970 F.2d at 810 (emphasis added); *see also LaPorte v. Gen. Elec. Plastics*, 838 F. Supp. 549, 555 (M.D. Ala. 1993) ("[U]nless the employee's activities are severely restricted while he or she is on call, on-call time is used primarily for the employee's benefit, not the employer's."); *Henry v. Med-Staff, Inc.*, No. SA-CV-05-603-DOC-ANX, 2007 WL 1998653, at *6 (C.D. Cal. July 5, 2007) ("The general rule is that although every on-call policy creates some imposition on the life of the employee subject to the terms thereof, such time will

nonetheless rarely be compensable.") (internal quotation omitted).  Determining whether the time spent on call is compensable under a particular set of facts and circumstances is a question of law.  *Birdwell*, 970 F.2d at 807.

The use of mobile devices, such as cell phones, pagers, and Blackberries, significantly eases restrictions on employees caused by an on-call policy and weighs heavily in favor of a determination that such time is spent primarily for the employee's benefit.  For example, in *Birdwell*, the Eleventh Circuit found on-call time of police detectives not to be compensable, where, while on call, the detectives were instructed to be prepared to report to work immediately if called to duty, were not permitted to leave home unless they left a forwarding number or carried a beeper, and could not leave town, go on vacation, or take compensatory time off.  *Id.* at 808.  In finding the on-call time non-compensable, the court noted that "several detectives worked two jobs" and that the detectives were free to leave home "merely by leaving a forwarding number or purchasing a beeper."  *Id.* at 808.  The court further stated that the detectives "could do anything they normally did so long as they were able to respond to a call promptly and sober."  *Id.* at 810.

Similarly, in *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671 (5th 1991) (en banc), the court held that plaintiff's on-call time was not compensable where the plaintiff, a biomedical equipment repair technician, was required to be reachable by beeper at all times and was required to report to his employer's premises within twenty minutes of being called.  In reaching this conclusion, the court emphasized that plaintiff "was not only able to carry on his normal personal activities at

his own home, but could also do normal shopping, eating at restaurants, and the like, as

he chose." *Id.* at 676.  The *Bright* court concluded that the plaintiff was "clearly able to

use his on-call time effectively for his own personal purposes," even noting that the

plaintiff was "*much more* able to do so" than employees in many other cases where on-

call time was found not to be compensable.  *Id.* at 677-78 (emphasis in original).

Notably, the *Bright* decision was viewed with approval by the Eleventh Circuit in

*Birdwell*.  970 F.2d at 808-09.

Other courts have arrived at the same conclusion as *Birdwell* and *Bright* where

employees were provided with mobile devices to ease burdens on them while they were

on call.  *See, e.g., Henry*, 2007 WL 1998653, at *11 (noting that employer's "provision of

company cell phones eases restrictions and weighs against compensating on-call time on

an hourly basis."); *Nicholas v. Bright House Networks, LLC*, No. 6:05-CV-1865-ORL-

31KRS, 2007 WL 187810, at *3 (M.D. Fla. Jan. 22, 2007) (cable service technician

required to carry a beeper or cell phone when not at home but permitted to use his time as

he wished during on-call hours, not entitled to compensation for time spent not working

while on call); *LaPorte*, 838 F. Supp. at 556 ("It is clear to the court that the plaintiffs'

on-call time is spent primarily for their own benefit," where employees were required to

be on call at all times but were free to do whatever and go wherever they wanted, as long

as they responded as soon as possible after receiving a page); *Berry v. Cty. of Sonoma*, 30

F.3d 1174, 1187 (9th Cir. 1994) (coroners' on-call time spent waiting for work not

compensable because they were able to use time effectively for personal pursuits despite

fact that they were on call 24 hours a day, were required to respond to pages within 15

minutes, and received three to six calls per day); *Gilligan v. City of Emporia*, 986 F.2d

410 (10th Cir. 1993) (sewer department employees not entitled to compensation for on-

call time, although required to wear a pager, refrain from doing anything that might

prevent them from hearing a page, avoid alcohol, respond within 30 to 60 minutes to a

call, and were subject to discipline for a failure to satisfy these requirements).

  Here, Verizon issued a Blackberry phone to Plaintiff, which allowed Plaintiff and

other PAMs to be free of job-imposed geographic limitations for at least a substantial

portion of their day.[5]  (Cutcher Dep. at 30; Laulo Dep. at 29.)  Indeed, Plaintiff

acknowledges that other PAMs attended school and were even able to maintain other jobs

while working as a PAM.  (Pl. Dep. at 202-03.)  Such personal liberty allowed the PAMs

is likewise borne out in the myriad PAM declarations submitted by PDS and Verizon in

connection with class certification, and this variability associated with how PAMs spent

their days was relied upon by the Court in support of its decision not to conditionally

certify an opt-in class in this case.

  While Plaintiff contends that she was generally tied to her home office for

virtually all of the 72 hour period, she reluctantly admits that she on occasion left to go to

church functions.  (Pl. Dep. at 206-07.)  In addition, Plaintiff's father and mother testified

that they regularly accompanied Plaintiff to choir practice at their church on Thursday

---

[5]  Plaintiff contends that she needed to be in her home office in order to use her
desktop computer and enter data into the online reporting system used by PAMs, but
even Plaintiff does not contend that all working time was *required* to be spent at the
computer, and it is clear that reports could be made online after a customer
communication took place earlier in the day while away from the computer.  (Pl. Dep. at
208-210; Cutcher Dep. at 126-128.)

evenings while Plaintiff was working as a PAM.[6]  (J. Lockwood Dep. at 72-73; G.

Lockwood Dep. at 121.)  Plaintiff's choir practice generally started at 7:00 p.m. and

ended between 8:30 p.m. and 9:00 p.m.  (J. Lockwood Dep. at 73; G. Lockwood Dep. at

121.)  Plaintiff also attended Wednesday evening church services with her family from

6:00 p.m. until 7:30 or 8:00 p.m.  (G. Lockwood Dep. at 60.)  Their church was located

45 minutes away from their home.  (*Id.* at Dep. at 123.)

Additionally, Plaintiff's mother accompanied Plaintiff to her children's doctor and

to a store to obtain medication.  (G. Lockwood Dep. at 52.)  Plaintiff carried her

Blackberry phone with her.  (*Id.*)  Plaintiff's mother recalled that Plaintiff's phone rang

maybe twice during these trips.  (*Id.*)  Plaintiff also accompanied her children, along with

her mother, to special occasions at the children's school.  (*Id.* at 63.)  On those occasions,

Plaintiff carried her Blackberry phone with her.  (*Id.*)  During those outings, Plaintiff's

mother recalls occasions where Plaintiff told a customer that she would have to get back

to him or her because she did not have her notes in front of her.  (*Id.* at 64.)

Even if Plaintiff only left her home with Blackberry in hand to attend to personal

matters on a few occasions during the alleged 72 hour workweek, those times that

Plaintiff was "on call" while carrying her Blackberry and not actually performing

services is not compensable work time.  Simply put, the limitations allegedly placed upon

her (that she was required answer calls) come nowhere close to the "severe restrictions"

necessary to make on-call time compensable.  *See, e.g., LaPorte*, 838 F. Supp. at 552,

555 (on-call time not compensable where employees were required to call their team lead

---

[6]        Plaintiff lived with her parents while working as a PAM.  (Pl. Dep. at 21.)

"as soon as possible after receiving the page"); *Bright*, 934 F.2d at 673 (on-call time not compensable where employee required always to be reachable by beeper and had to arrive at hospital within 20 minutes of being paged). Accordingly, Plaintiff's theory fails and PDS submits that it should be granted summary judgment on any claim by Plaintiff that she was entitled to be compensated for time that she spent "on call" as a PAM but not actually performing work as a PAM.

      C.    <u>Should Plaintiff Prove Entitlement to Unpaid Overtime Compensation, Such Damages Must Be Calculated Using the Half-Time Method</u>.

PDS contends that Plaintiff is not entitled to any recovery because she never worked more than 40 hours in a week as a PAM. Should Plaintiff nonetheless succeed in proving liability for at least some overtime compensation, any such damages must be calculated using the half-time method articulated by the Supreme Court in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 1216 (1942). S*ee also Urnikis-Negro v. Am. Family Property Servs.*, 616 F.3d 665 (7th Cir. 2010).

The FLSA does not provide specific guidance about the calculation of damages for unpaid overtime. Regarding overtime generally, the statute mandates overtime payment for non-exempt employees for hours worked over 40 in a workweek at a rate of one and one-half times the *regular rate* at which the employee is paid. 29 U.S.C. § 207(a)(1). The calculation of the "regular rate" is thus the starting point for determining the amount of overtime an employee is owed.

When an employee is not paid by the hour but rather is paid a fixed amount, the first step in calculating the employee's regular rate is "determining the number of hours that salary was intended to compensate." *Urnikis-Negro*, 616 F.3d at 679. A salary can

either be intended to compensate for a set number of hours or for a variable number of

hours.  If the salary in intended to compensate the employee for a set number of hours

each week, the employee's regular rate is calculated by dividing his or her weekly salary

by the set number of hours per week.  *See Missel*, 316 U.S. at 580, n. 16.  In such a

circumstance, all overtime hours would be paid at one and one-half times that regular rate

in addition to the employee's normal weekly salary.  *Id.*

On the other hand, when the number of hours worked varies from week to week,

employers and employees can intend that the weekly salary compensate for *all* hours

worked during the week.  *Missel*, 316 U.S. at 580 ("No problem is presented in

assimilating the computation of overtime for employees under contract for a fixed weekly

wage for regular contract hours *which are the actual hours worked*, to similar

computations for employees on hourly rates") (emphasis added).  In this situation, the

regular rate is calculated by dividing the weekly salary by the number of hours actually

worked in a given week.  *Missel*, 316 U.S. at 580; *Kohlheim v. Glynn Cty., GA*, 915 F.2d

1473, 1480 (11th Cir. 1990) (the regular rate for salaried employees is calculated by

dividing the total pay by the total hours actually worked); *Joseph G. Moretti, Inc. v.

Boogers*, 376 F.2d 27, 28 (5th Cir. 1967)[7] (reversing the district court's damage

calculation, finding that where no forty-hour week is agreed upon and weekly hours vary,

the regular rate is determined by dividing the wages paid by the hours actually worked

and calculating overtime pay accordingly) (quoting *Bay Ridge Operating Co. v. Aaron*,

---

[7]     Decisions of the former Fifth Circuit issued before October 1, 1981, are binding
precedent in the Eleventh Circuit.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209
(11th Cir. 1981) (en banc).

334 U.S. 446 (1948)); *Warren-Bradshaw Drilling Co. v. Hall*, 124 F.2d 42, 44 (5th Cir.

1941) ("[I]f there is no agreement fixing the amount to be paid for regular and overtime

work, the regular rate, as to it, may be properly determined by dividing the total pay each

week by the total hours worked").  In such a situation, the employee's regular rate would

vary from week to week, and the regular rate would decrease as the number of hours

worked by the employee increased.  *Missel*, 316 U.S. at 580.

Under the *Missel* method of calculating the regular rate, the fixed salary includes

payment at the regular rate for all hours worked, including overtime hours.  *Urnikis-

Negro*, 616 F.3d at 675.  Thus, the employee is owed only the overtime premium, or one-

half the regular rate, for hours worked over 40.  *Id.*  In other words, the employee is still

paid one and a half times the regular rate as required by the statute; the straight-time

component of any hours over 40 is paid as part of the salary, and the overtime premium

must be paid at one-half the regular rate for any hours over 40 in a workweek.[8]

In its recent opinion in *Urnikis-Negro*, the Seventh Circuit provided a thorough

discussion of the application of the principles set forth in *Missel* to the calculation of back

overtime damages when an employee is found to have been improperly classified as

---

[8]     To provide a brief example, assume an employee is paid a fixed weekly salary of $1,000.00.  If that salary is intended to compensate the employee for 40 hours per week, the regular rate for all weeks would be $25.00 per hour ($1,000/40 = $25).  Therefore, the employee's overtime rate is $37.50 (1½ x $25 = $37.50).  In a week where the employee works 50 hours, the employee would be entitled to $375.00 in overtime pay (10 x $37.50 = $375.00).  If, however, the $1,000.00 salary is intended to compensate the employee for all hours worked, in a week where the employee works 50 hours, the regular rate for that particular week would be $20.00 per hour ($1,000/50 = $20).  Since the employee has been paid at the regular rate of $20.00 for all 50 hours, he or she is entitled to an overtime premium of one-half the regular rate, or $10.00 per hour, for hours worked over 40.  Thus, the employee would owed $100.00 in overtime pay ($10 x 10 = $100).

exempt from the FLSA's overtime requirements.  The plaintiff in that case was treated as exempt and was paid a yearly salary.  *Urnikis-Negro*, 616 F.3d at 665-66.  She brought a claim for unpaid overtime under the FLSA, claiming that she should have been classified as non-exempt.  *Id.*  She prevailed on her claim after a bench trial, but appealed the district court's calculation of her back overtime damages.  *Id.*  After examining and affirming the district court's finding that the plaintiff's salary was intended to compensate her for all hours worked, the Seventh Circuit, relying on *Missel*, held that the proper way to calculate the regular rate when an employee is paid a fixed salary for all hours worked is to divide the salary by the hours actually worked in a particular week.  *Id.* at 681.  The court further held that the proper measure of damages for unpaid overtime in such a case was the overtime premium of one-half the regular rate for hours over 40.  *Id.*; s*ee also Ahle v. Veracity Research Co.*, No. 09-0042, 2010 WL 3463513, at *18-19 (D. Minn. Aug. 25, 2010) (finding that the regular rate compensated all hours worked because, as in *Urnikis-Negro* and *Missel*, plaintiffs were paid a salary for all hours worked, alleged they worked substantial overtime, and never received payment for overtime); *Harris v. Seyfarth Shaw LLP*, No. 09 C 3795, 2010 WL 3701322, at *3 (N.D. Ill. Sept. 9, 2010) (holding plaintiff was only entitled to overtime pay at one-half her regular rate because her fixed salary was meant to cover all hours worked at her regular rate); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1269 (11th Cir. 2008) (whether damages can be calculated as one-half the regular rate depends on whether the weekly salary is intended to compensate for all hours worked); *Torres v. Bacardi Global Brands Promotions, Inc.*, 482 F. Supp. 2d 1379, 1380-81 (S.D. Fla. 2007) (a non-exempt

employee who receives a salary for variable hours is only owed damages of one-half the regular rate for any hours worked over forty in a week); *Martin v. Tango's Rest.*, 969 F.2d 1319, 1324 (1st Cir. 1992) (an employee paid a fixed wage for variable hours has been paid at the regular rate for all hours worked and is owed 50% of the regular rate for overtime hours as back pay).

The courts that apply the principles of *Missel* remedially to calculate damages using the "half time" method do *not* rely on the U.S. Department of Labor's fluctuating workweek interpretive bulletin, 29 C.F.R. §778.114, ("the FWW Regulation"), which contains guidance about when an employer may pay a fixed salary for variable hours worked and pay overtime using the "half time" method.  Nor does PDS rely on the FWW Regulation in support of its argument here.  In fact, in *Urnikis-Negro*, the Seventh Circuit expressly found that the FWW Regulation did not apply in its analysis of the appropriate method for calculating damages in a misclassification case.  The court instead found that the tenets of *Missel* controlled the analysis and on this basis applied the "half time" method to calculate damages, because of the district court's finding that the plaintiff's salary covered all hours worked.  *Urnikis-Negro*, 616 F.3d at 680-81.  Thus, the Court need not be concerned here with any arguments that Plaintiff might put forth regarding the applicability of the FWW Regulation to this case.

Where there is undisputed evidence that the plaintiff's salary was intended to compensate her for all hours worked in a given workweek, it is appropriate to grant summary judgment on the issue of the proper method for calculating any overtime damages that might be awarded.  *See Torres*, 482 F. Supp. 2d at 1381 (granting summary

judgment on the proper way to calculate overtime damages and noting that a "non-exempt employee who receives a weekly salary for all hours worked has, by definition, already been paid his 'regular rate' for all hours worked in a workweek.  Thus, a salaried employee is only owed half-time for any hours worked in excess of forty per workweek."); *Zoltek v. Safelite Glass Corp.*, 884 F.Supp 283, 287 (N.D. Ill. 1995) (granting summary judgment for the employer holding that plaintiff's regular rate was to be calculated by dividing his salary by all hours worked, and not forty hours as plaintiff contended).[9]

   Here the undisputed record evidence shows that Plaintiff was paid a fixed salary – $400.00 per week – which she understood was intended to compensate her for all hours worked in a given week.  At deposition, Plaintiff testified as follows:

> Q:  And is it true that when you started the job you understood you would be paid $400 per week, plus possible bonuses and commissions if you earned them, and that would be for all the hours you worked that week as a PAM?

> [. . .]

---

[9]     The plaintiff in *Zoltek* contended that the parties intended that he would receive an hourly wage instead of a salary because his paycheck listed an hourly rate.  *Zoltek*, 884 F.Supp. at 286-287.  The court rejected this argument, holding that the listed "hourly rate" was merely an accounting artifact required by the employer's payroll system, and that employment records were not controlling on the issue of the regular rate.  *Id*. at 287.  *See also Rushing v. Shelby Cty. Gov't*, 8 F. Supp. 2d 737, 744 (W.D. Tenn. 1997) (finding that plaintiffs' paychecks and payroll records were not controlling in determining the regular rate).  Thus, the fact that Plaintiff's payroll records indicate that she was being paid for 40 hours per week is not controlling with respect to the number of hours her salary was intended to compensate or her regular rate.  (*See* Laulo Dep. at 37-38 and Ex. 2)

> A:  So in other words, you're saying the $400 and then whatever bonuses and
>
> commissions for the 72 hours that I worked for the week?
>
> Q:  That was your understanding of what you would be paid.  Correct?
>
> A:  For the – right.  That was the original offer.

(Pl. Dep. at 214.)  Moreover, Plaintiff never complained about not being paid overtime,
further demonstrating her understanding that her salary was meant to compensate her for
all hours worked.  (Pl. Dep. at 216.)  The PDS and Verizon employees responsible for the
PAM program similarly understood that each PAM's weekly salary was intended as
compensation for all hours worked in a week.  (Laulo 3rd Decl. at ¶ 2; Cutcher 2nd Decl.
at ¶ 6)

Given this undisputed evidence regarding the intended scope of the $400 weekly
payment, to the extent Plaintiff may prove entitlement to damages for alleged unpaid
overtime, any such damages must, as a matter of law, be calculated as set forth above.
That is, the regular rate must be calculated by dividing Plaintiff's weekly compensation
by the number of hours she actually worked each week, and Plaintiff should be awarded
only the half time overtime premium for any such hours because the regular rate for such
hours has already been paid as part of her salary.  PDS therefore requests that the Court
enter summary judgment regarding the appropriate measure of damages in this case.

### III.    CONCLUSION

Based on the foregoing, PDS respectfully requests that the Court enter summary
judgment in its favor, finding that (1) any claim by Plaintiff that she was entitled to be
compensated for time that she spent "on call" as a PAM but not actually performing work

as a PAM fails as a matter of law; and (2) to the extent Plaintiff proves entitlement to any

damages for unpaid overtime, such damages must, as a matter of law, be measured by

(i) calculating Plaintiff's regular rate each week by dividing her weekly compensation by

the number of hours she actually worked that week, and (ii) compensating Plaintiff at

one-half times the regular rate for any hours worked over 40 in a particular week.


Respectfully submitted this 1st day of November, 2010.


/s/ Brett E. Coburn
Robert P. Riordan
Georgia Bar. No. 606431
Brett E. Coburn
Georgia Bar No. 171904
Camille W. Ward
Georgia Bar No. 425262
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Tel. No. (404) 881-7000
Fax. No. (404) 881-7777
E-mail:  bob.riordan@alston.com
          brett.coburn@alston.com
          camille.ward@alston.com

Jeffrey W. Gibson
Florida Bar No. 0568074
MACFARLANE FERGUSON &
     MCMULLEN, P.A.
625 Court Street
Clearwater, Florida 33756
Tel. No. (727) 441-8966
Fax. No. (727) 442-8470
E-mail:  jg@macfar.com

ATTORNEYS FOR DEFENDANT PDS
TECHNICAL SERVICES, INC.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 1, 2010, I electronically filed the foregoing

PDS TECHNICAL SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT

AND MEMORANDUM IN SUPPORT THEREOF with the Clerk of the Court by using

the CM/ECF system, which automatically sends email notification of such filing to the

following attorneys of record: Ryan D. Barack, Gregory A. Hearing, Alan E. Mansfield,

Jonathan L. Sulds, William A. Wargo.

By: <u>/s/ Brett E. Coburn</u>
Brett E. Coburn